Our first case in the morning is People v. Tyler Burlington. 415-0642, Mr. Sant Jermaine and Ms. McClain for the appellant, for the appellee. You may proceed. Mr. Sant Jermaine Good morning. Your honors, counsel, and may it please the court. My name is Sant Jermaine and I am here on behalf of Mr. Tyler Burlington. Mr. Burlington raised four issues in appeal. The state conceded issue number three and number four. We will be addressing issue number one. However, I am willing to take any question the court may have on issue number two. In People v. Johnson, the appellate court held that the Illinois Supreme Court physical authority test, as expressed in People v. Bradford, applies to retail theft regardless of when the defendant formed the intent to shoplift. The appellate court reasoned that if forming the intent to shoplift materials does not revoke one's authority to remain within a retail establishment, therefore it cannot logically revoke the authority to enter said retail establishment. What if you have the intent before you enter? That's precisely the reason you're entering the store. Yes, if you have the intent. I don't understand your question, your honor. If I decide I'm going to go to Home Depot and shoplift a chainsaw, because I need a chainsaw to clear my yard after a storm, and I don't have the money to pay for it, I form that intent, I think to myself, well, I'll just walk in, pick one up, and walk out. Because they're busy, would that make a defendant guilty of burglary? No, your honor. Under People v. Johnson, it's expressed that the physical authority test, as applied in People v. Bradford, applies on all manifestation of the burglary statute regardless of when the intent is formed. Because the application of the physical authority test within Bradford is limited to retail establishment, and therefore if a defendant enters to shoplift, that is occupied, that is an occurrence falling under the retail theft statute. The retail theft statute actually provides a mechanism by which a defendant who forms the intent to shoplift before entering the establishment could be penalized under said statute. Thus, the court in Johnson ruled that applying the limited authority doctrine to shoplifting cases disregards the purpose of criminalizing burglary, negates the legislative intent in establishing the retail theft statute, and conflicts with Bradford. This court should follow Johnson because the relevant facts are the same. In Johnson, the defendants entered an open retail establishment to work Walmart during ordinary business hours, selected items for sale, and then attempted to exit during business hours. The same thing occurred here. The undisputed fact is that Mr. Burlington entered the Menard store during business hours, selected a video recording system, and then attempted to leave. When he was stopped, he attempted to return it for cash value. At no time did Mr. Burlington went into areas not open to the general public. At no time did he enter, at no time was he under a prohibition from being in the store. In fact, as a member of the general public, he has a general invitation to come in and inspect the material. The Supreme Court says you don't have authority to enter a store to commit a theft or a felony. No, the Supreme Court did not say so. I thought all the way back to Weaver, which is a case 50 years ago that the Supreme Court has consistently said. Is that incorrect? That is incorrect, Your Honor. How so? Because the Supreme Court did not address the without authority following Weaver until People v. Bradford. Numerous appellate court cases have decided, as extended Weaver's limited authority doctrine, to encompass short-lifting circumstances. However, in People v. Bradford, the Illinois Supreme Court established a physical authority test and we forced course as to Weaver. That's for the authority to remain. It didn't even address the authority when you enter with the intent to commit a theft. That is correct. But the way the relevant element of without authority is applied in the Burberry statute suggests, actually requires, that that language be applied consistently throughout both forms of the Burberry statute. That is what Johnson stated and that is what the rule as to the statutory construction canon of consistency requires. There is no logical difference in the way the legislature expressed without authority as to remaining within versus as the way it does so in the entry without authority. That's not Bradford, that's Johnson. That is Johnson. But Johnson, for Johnson to be incorrect, there must be some expression that suggests that the without authority language is used differently throughout the statute. But there is no reason to believe that, Your Honor. As stated, Mr. Burlington entered the open minutes or during business hours. He never left the general public area. He was within his authority to be here as a member of the general public and he attempted to leave during business hours. That puts him squarely within the physical authority test as expressed in People v. Bradford and as extended in People v. Johnson. Let's take Justice Connacht's example a little further. If your sole job in life is to travel around the country, going into retail establishments and stealing items, that's all you do. That is your vocation. Your position is that your interpretation of Johnson is that you can never be charged with burglary. If the facts resemble Mr. Burlington and Mr. Bradford and Mr. Johnson's conduct, then yes, you can never be charged with burglary. If your job is to do nothing but go into stores and steal, you cannot be charged with burglary. All things being equal, yes, Your Honor, you could not be charged with burglary. If you enter into a retail establishment and you stay within the general public area, never leave that area, select items from that area, and attempted to leave during business hours, you are within the retail test statute. Could a retail establishment identify a shoplifter, a person who is known to be a shoplifter? Perhaps they exhibit symptoms of kleptomania. They take things they don't even need and they become known to the store because of loss prevention specialists. Could they be barred entry to the store? Yes, Your Honor. I don't know of any... So if there was a Burtner's that had six entrances, they could be barred, but if they go to another entrance and nobody sees them, they're coming in with authority at that point? No. If they are barred from entering into the establishment... How are you barred? What would be the... somebody would see you and say, you're not welcome to shop here, or would they get a letter in the mail? What would it be? Well, if he is known to be a kleptomaniac and he entered at one point... Or a professional shoplifter. Sure. Then he would be known as such, so at one point he would have been warned not to come back, or he would have been warned at the moment he tried to cross the threshold, whether he tried to enter through entrance number one or entrance number two. So if the person has been warned... Yes, Your Honor. Then no matter what entrance they come in, even if it's free access... At that point he no longer has authority to enter, because his physical presence is no longer welcome. If he is told that he is not welcome in the establishment, which the establishment has a right to do... But he is not welcome in the establishment, and he knows he's not welcome in the establishment, if he's going there for the sole purpose of theft. That would be incorrect, Your Honor. If he is going there for the sole purpose of theft, he can always change... it's regardless of what his purpose is... You can change your mind after you shoot the bullet. I didn't really mean to shoot it. I didn't have the intent to hit anybody. But it's a time you're entering with the express purpose, having already formed the intent. I mean, as trial judge, I've seen such gentlemen prosecuted, who did nothing but go from, in Decatur, from Menards to the Forsyth Mall, and is caught with their automobile full of retail merchandise. That's the only reason they went into any of those three places. And they happen to get caught in the third one, then they go search the car, and they find all that. Your Honor, the physical authority test, as expressed in People v. Bradford, looks at whether the person has the physical authority, whether the person's presence is welcome. There is no reason to believe that that physical authority test is limited to the remaining within. That's your position, but that's not what Bradford said. That is my position, but there is no logical reason to believe that the without authority language, which is applied consistently throughout the Burberry statute, has different meaning within the same statute. In fact, that is a rule of statutory construction expressed by the Illinois Supreme Court in People v. Mills. Why is the possibility that because remaining within, in order to establish remaining within, you need to be able to determine what has happened with the person's state of mind once they've entered, as opposed to entering with intent, is pretty clear. If you walk into the store, you have no cash, you have no credit cards, you take an item and you walk back out, it's pretty easy to be able to establish what their intent was, as opposed to entering and remaining. Yes, Your Honor. Because they don't. Bradford only addressed the second part. And wouldn't that be a pretty clear distinction, that entering with intent is a lot easier to determine from facts than remaining? Well, Your Honor, no. It's not a clear distinction. It's not a clear distinction. And in fact, the Illinois legislature envisions such confusion by enacting provision within the Retail Test Statute, which is aimed to prohibit entry with unlawful intent. If you have a shielding device, if you have a theft shielding detection device, and you're entering the store with that device, it is clear that your intent is to commit a theft within. However, that falls squarely within the Retail Test Statute, and the legislature's intent in that was to occupy the field of shoplifting during ordinary business hours of a retail establishment. However, to extend the burglary statute to this idea that the limited authority would apply would lead to absurdities. Imagine if a defendant were to enter with the intent, he's being challenged by his buddies and they say, well, why don't you go in there and take a candy bar? He goes in, he takes a candy bar, a $2 candy bar. He could be charged with a Class 2 felony, or if the prosecutor is feeling graceful, he could be charged with a Class A misdemeanor under the Retail Test Statute. Isn't that the case with many charges, that a prosecutor has discretion to decide what to charge? Particularly when the crimes don't have the same elements, they have different punishments. You've got the kid that steals a candy bar versus the 42-year-old man that's already served three terms in prison for retail theft, and has nothing in his shopping cart but, I was going to say VCRs, but I guess nobody steals those anymore. Three small televisions. That's the only thing he's got in his shopping cart. And you go out and you search his car and you find he's got all this stuff from other stores. Sure. Two answers to your question, Your Honor. First, the Retail Test Statute envisioned that. As to the 42-year-old man with an extended criminal background, the Retail Test Statute allows for him to be charged as a felony under the Retail Test Statute because there are provisions. What felony? Huh? What felony? Retail Theft Felony. Which is what class? I believe it would be a class four, maybe a class two, depending on the value and the extent of his criminal background and the manner in which he took, he committed the theft. What does Bradford say about Weaver? What Bradford says about, Bradford, I'm sorry, Your Honor. Bradford does not truly reverse Weaver, but what Bradford expressed is that in light of the enactment of the Retail Test Statute, which Bradford stated occurred seven years after Weaver, it would strain logic, and this is the language from Bradford, it would strain logic to presume that the legislature intended circumstances of retail theft to fall under the burglary statute. So what the Illinois Supreme Court stated is after the establishment, the enactment of the Retail Test Statute, Weaver's limited doctrine, authority could not be applied to circumstances of ordinary shoplifting. That would be pretty easy to say. Well, is that right, Your Honor? That would be pretty easy to write. But that is what the Illinois Supreme Court wrote. Well, they didn't, as you said, they didn't reverse Weaver. Because they did not have to. They didn't say Weaver's bad law, Weaver was okay at the time, but after the legislature, I mean, there isn't language like that in Bradford. Well, what it says, what the opinion in Bradford said is that it strains logic to presume that after seven years from Weaver, the enactment of the Retail Test Statute would allow for circumstances of shoplifting to be charged as burglary. I think that's pretty clear. Except that they were talking about that in a case which involved Remain Within. Which brings me back to People v. Johnson. As stated in Johnson, there is no logical difference between the two forms of the burglary statute. Counsel, you haven't mentioned that the Bradford court traced the historical development of the burglary statute. Are you familiar with that portion of the Supreme Court case? Yes, I believe they look at the common law evolution of the burglary statute. Yes, and it used to be called burglary found in building, burglar found in building. And they used that to show why burglary by remaining in the building was inconsistent with the genesis of this part of the statute being burglar found in building. Why would they have done that unless they wanted to make a distinction between the authority to remain and the authority to enter? I'm not sure why they would have done that, Your Honor, but the ultimate ruling that they came down to was establishing the physical authority test. Now, under common law, there were multiple burglaries, multiple forms of burglaries. But the statute that was enacted compiled these burglaries into one form and made no clear distinction between the two manifestations of the offense of burglary. The way the statute is written, without authority, must be applied consistently throughout the statute. And I'm sure that is squarely in line with what Bradford envisioned and what was held in People v. Johnson. However, going back to Justice— You would agree it would be very easy to amend the burglary statute to reflect the position that you're taking today. But the General Assembly hasn't done that. Well, the General Assembly has not amended the language without authority. And as argued by the state, that may be indicative of legislative acquiescence. However, legislative acquiescence would attach to the reasoning or the construction given in People v. Bradford because the statute was amended as of this year, January 1, 2018. And the language remains the same. The without authority language did not change in any way since the enactment of the statute and since the most recent amendment. Therefore, there is reason to believe that the legislature would have known of People v. Bradford and would have accepted that construction to be the correct construction of the without authority language. If the Court has no further questions, we ask that this Court vacate Mr. Burlington's conviction. Thank you. Thank you. May it please the Court. The State is contending that Bradford did not change the Supreme Court's holding that a person enters a retail establishment without authority pursuant to the burglary statute when he enters with a purpose inconsistent with the reason the building is open. Bradford should not be extended to burglary by entering. The Supreme Court in Bradford limited its holding to burglary by remaining and did not reject Weaver. In Bradford, the Court established a physical authority test only as it applies to burglary by remaining and not to burglary by entering. Would it be fair to say that the State's position is that Johnson was just flat out wrong? Yes, it would be. Okay. Respectfully. In Bradford, the Court rejected the State's attempt to extend the analysis of Weaver to burglary by remaining, but it did not overrule Weaver. In fact, the issue is framed as to what it means to remain without authority in a public place of business, which is burglary by remaining. The rationale for not extending Weaver to burglary by remaining supports the State's argument in this case that Weaver remains good law after Bradford. First, the Court in Bradford said it's not clear what evidence would be sufficient to establish that an offendant remains within a public place in order to commit a theft. In contrast, case law has made very clear what type of evidence is sufficient to establish burglary by entering. Secondly, the Court in Bradford said the State was arbitrarily distinguishing between a defendant who shoplifts one item and leaves it immediately, and one who shoplifts more than one item or lingers inside the store before leaving. In contrast, under burglary by entering, there are no arbitrary distinctions. If one enters a store with intent to steal, that's sufficient. Third, burglary by entering does not encompass nearly all cases of retail theft. Thus nullifying the retail theft statute. Burglary by entering requires intent prior to entering, shoplifting does not. Shoplifting requires an actual taking, burglary by entering does not. They're two separate statutes, two separate statutes with different elements, and the legislature has not eliminated the Weaver concept of burglary of a public establishment. In contrast, defendant's construction of the burglary statute would eliminate burglary in any retail establishment during business hours, contrary to a long line of cases interpreting the burglary statute. That's not what Bradford intended, and that's not an appropriate extension of Bradford. As far as legislative history, at common law, burglary is defined as breaking and entering the dwelling of another in the nighttime with intent to commit a felony. The current statute definition has eliminated breaking, dwelling, nighttime as elements. The burglary statute was amended in 1961 such that a defendant could also be charged with unlawful remaining. Weaver was decided in 1968, and then by adding the retail theft statute in 1975 without amending the burglary statute, which had been interpreted by Weaver in 1968, legislature acquiesced to the interpretation of the burglary statute in Weaver. The Supreme Court acknowledged this in Miller in 2010. In Miller, the Supreme Court stated that had the legislature intended that a defendant could only be convicted of either burglary or retail theft where they are based on conduct that occurred during the same criminal transaction, it clearly could have done so, but it did not. The state would ask that this Court affirm. Counsel, let me ask you. Suppose someone sees a case, thinks, I'd kind of like to go in and get a candy bar. Checks his pocket, sees he has a buck, thinks that's enough. He goes in to buy the candy bar, and lo and behold, the candy bar costs $1.50. So while there, he thinks, I really want that candy bar, so I'm just going to steal it. So he takes it. So he formed the intent to take it after he was in there because he found out he didn't have enough money. That would be a class A misdemeanor retail theft, right? The next person comes by, and he sees the case. He says he wants a candy bar too. He checks his pocket and sees that he's only got a quarter, so he knows he doesn't have enough money to buy a candy bar, but he wants it. So he goes in the case. He's with the intent to steal the candy bar, and he does. Now, that's a class II felony under the state's theory. Is that fair under those two hypotheticals? Very similar except for where the intent was in a court. I think that that is the way the law is, and I think it's up to prosecutorial discretion and trying to be fair to individual defendants, what they are charged with. But I do think that they could be charged under – a second person could be charged under either statute. It would be hard to prove, probably. When that intent is – that's not always easy to prove intent. A lot of times the accused makes admissions to the officers, which I don't think would be too far-fetched to think that the two scenarios I gave you, that those two individuals may have made those statements, and therefore the facts according to the statement would justify the felony for the second individual. It would. I think there was a statement in Johnson that prosecutors should not have that kind of discretion, and I presume you disagree with that. I think it's up to the legislature to amend the statute. If the legislature doesn't intend for Weaver and the long line of cases after it to be applicable to public establishments, I think that they need to amend the statute. An opposing counsel mentioned that the state could have the discretion to go with a felony or a misdemeanor, but the state also has the discretion to charge nothing, correct? Correct. Okay. Thank you. Thank you, counsel. Rebuttal? Yes, Your Honor, and really quickly. After Justice Turner's question, it would be unfair to allow such hypothetical to occur. In fact, the Illinois Supreme Court has stated this in People v. Christie. Prosecutorial discretion is not absolute. Prosecutorial discretion cannot be allowed to nullify the enactment of a specific statute which it occupies and envision applying to the relevant occurrence. The legislature intended for the retail theft statute to occupy ordinary retail theft. But that discretion can only be tested after a conviction. Yes, Your Honor. So how about overcharging? Yes. There are some prosecutors that overcharge and or charge strictly and then say, but if you want to just plead guilty to the retail theft, we'll reduce the charge. Sure. That can always occur. That's a lot of discretion. That is a lot of discretion. That could be discretion used in a much more egregious situation rather than the unfairness that we would all feel regarding, or maybe we wouldn't all. I'm sitting between two prosecutors, former state's attorneys, so I don't know exactly what their thoughts would be. But there's the opportunity for discretion where you're letting the person off when you shouldn't, when your constituents would probably say, why didn't you go ahead and prosecute the more serious crime? Because prosecutors have discretion. Sure, Your Honor. Sure. However, prosecutorial discretion could not be allowed to be absolute as to nullify an enacted statute. If a conviction is allowed to stand simply because the prosecutor had the discretion to charge him and to get him convicted under greater statute, under greater offense, then the lesser offense, the offense with the lesser penalty, will never be charged. That was the statement in People v. Christie, and that was also. . . I assume we're going to be getting rid of the battery statute where you have battery in a public way, which becomes an aggravated battery, and simple battery. Even though the acts are the same, if it happens on a public way, it would be an aggravated battery, class 3 felony as opposed to a class A misdemeanor, which means we shouldn't be allowed to prosecute people for aggravated battery in a public way. It needs to be a simple battery. Respectfully, Your Honor, that hypothetical, that analogy does not apply. It's not the same thing. Because you have, as you stated, it's a simple battery, and then there's an aggravated element. That was held in New Jersey v. Apprendi. The aggravated element is that it happens on a public way. And that changes the offense, Your Honor. Which happens pretty much. . . Most of your batteries are out on a public way somewhere. And that changes the offense, Your Honor. If it happens on a public way and that is an element that can be proven, that distinguish one form of. . . Are you saying retail theft and burglary have all the same elements? Not all the same element. Not all the same element, Your Honor. However, when it is being prosecuted in the context of a retail establishment during ordinary business hours, when the only reason for charging the person is simply the whim of the prosecutor, it is essentially the same offense. It's the whim of the prosecutor to charge ag battery or battery. They take into account whether it's a brawler with a bad record who attacks somebody but doesn't end up causing much injury versus a 17-year-old who punches his friend in the nose. Sure, but that is. . . Sure, Your Honor. Or in front of a bleeding heart pat. Sure, Your Honor. However, there is a distinguishing factor built in the statute. Here we do not have that. What we have is a statute that is generally applicable being applied to a specific situation for which. . . I shoplift more than $500. It's easily proven.  That would be a felony, Your Honor. That would be a felony. If they charge me with simple retail theft, they say I don't have to. . . The prosecutor says I don't have to charge you with the felony. If it's over. . . I have discretion. Under the statute, under the retail theft statute, if it's over $500, if it's over a certain threshold, then it falls under the felony. That is as to sentencing. That is a determination that the trial judge could make. But the. . . Not if the prosecutor doesn't charge with retail theft felony. If the prosecutor charges a simple retail theft, and the person pleads to it, what is the judge supposed to do? Reject the plea because the judge thinks the charge should have been more serious? Respectfully, Your Honor, that is not. . . That hypothetical does not address the issue present here. What we have is a prosecutor who chose to charge someone under a generally applicable statute whereas there was a more specific statute that could have been applied. I see that my time is up. I would ask the court to vacate Mr. Billington's conviction. Thank you. Thank you, Your Honor. Thank you.